# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:18-CR-8-TLS |
| | ) | |
| JUAN WILLIAMS | ) | |

## OPINION AND ORDER

The Defendant, Juan Williams, is charged in six counts of a seven-count Indictment. His Co-defendant, Niyah N. Howard, is charged in five of the seven counts. All of the charges are drug or firearms-related offenses related to conduct occurring in September and October 2017. This matter is before the Court on the Motion to Suppress [ECF No. 37], filed by Defendant Williams on May 18, 2018. The Defendant seeks to suppress all evidence seized during the October 31, 2017, search of the house located at xxxx Dichotomy Court, in Fort Wayne, Indiana. The home was searched pursuant to a search warrant, but the Defendant maintains that the warrant should not have been issued because the supporting affidavit was insufficient on its face to establish probable cause to believe that the evidence sought would be found at the residence. Specifically, he maintains that the affidavit did not establish probable cause to believe that he lived at xxxx Dichotomy Court, or that the residence was connected to drug trafficking.

The Government maintains that a practical, common sense reading of the totality of the affidavit established probable cause to issue the search warrant for the Dichotomy Court residence, as it provided sufficient detail to suggest that both of the Defendants were dealing drugs, were probably living at xxxx Dichotomy Court, and were smoking and possessing marijuana on a regular basis at that residence. The Government submits that, alternatively, if the Court reaches a different conclusion regarding the existence of probable cause, the fruits of the

search would be admissible because the officers acted in good faith in executing the search warrant.

## SEARCH WARRANT AFFIDAVIT

On October 27, 2017, Fort Wayne Police Department (FWPD) Detective Craig Wise provided a sworn affidavit requesting to search xxxx Dichotomy Court for evidence of drug activity. In support of his assertions that there was probable cause to believe that the residence would contain evidence of drug activity, Detective Wise provided the following information:

Detective Wise was working with a confidential informant (CI) who had proven credible and reliable in the past. On September 21, 2017, this CI coordinated a purchase of heroin/fentanyl from Williams. According to the CI, Williams lived on Dichotomy Drive.

At about 7:00 p.m, officers conducting surveillance observed a black Cadillac registered to Williams leave the 6000 block of Dichotomy Court. Surveillance followed the Cadillac to the location of the planned drug deal, a Taco Bell restaurant. At around 10:00 p.m, an officer searched the CI's person and found no contraband, and officers provided the CI with a recording and listening device and $140 of pre-recorded buy money. Detective Wise started driving the CI to the Taco Bell, but prior to their arrival, Williams left that location and switched the meeting location to a gas station. Before he arrived at the gas station, Williams drove to an apartment complex where the officers conducting surveillance "observed him do what they believed, based on their training and experience, to be a drug transaction." (Aff. 2, ECF No. 37-1.)

Detective Wise and the CI arrived at the new meeting location, and about 15 minutes later, Williams arrived in his Cadillac. The CI entered the backseat; a woman was already in the

front passenger seat. The CI provided Williams with the $140, and Williams handed the suspected heroin to the CI, who exited the car and walked directly back to Detective Wise's vehicle. The CI handed Detective Wise the purchased item, which field tested positive for fentanyl and weighed about 0.7 grams. It was packaged in a small plastic baggie. When the CI was debriefed and shown a photo array, the CI positively identified Williams as the person who had sold him the drugs.

On September 26, 2017, the CI coordinated a second controlled buy from Williams, and an officer performed a pre-buy search of the CI's person, finding no contraband. The CI was again provided with a recording and listening device and $140 of pre-recorded buy money. Williams directed the CI to meet at a particular McDonald's. Detective Wise and the CI proceeded to this location, arriving at about 8:30 p.m. In a subsequent telephone call, Williams advised the CI to walk across the street to a gas station. When the CI walked into the lot, Williams pulled up with his girlfriend, Niyah Howard, in the front passenger seat. The CI got into the back seat, and Williams told Howard to give the drugs to the CI while he went into the store to buy a bottle of water. Howard told the CI that it would be $150, and the CI responded that the CI only had $140. Howard waited on Williams to return to the car and asked "him if it was alright if she sold it to [the] CI for $140.00 instead of $150.00." (Aff. 3.) Williams gave Howard permission to sell the drugs to the CI for $140. In exchange for the drugs, the CI handed Williams and Howard the money, exited the vehicle, and walked directly back to the undercover vehicle. He handed Detective Wise the purchased item, which field tested positive for fentanyl and weighed about 0.5 grams. It was packaged in a small plastic baggie.

Surveillance followed Williams and Howard from the gas station to the Texas Roadhouse

3

restaurant, where they positively identified Howard as the person who was with Williams and conducted the transaction. The CI later identified Howard from a photo array as the person in the car with Williams.

Law enforcement records in the Spillman database showed that Howard's residence was xxxx Dichotomy Court, Fort Wayne, Indiana. Additionally "[t]hroughout this investigation," Detective Wise observed Williams's Cadillac "at this address at different times throughout the day." (Aff. 3–4.)

In October 2017, Detective Wise and another officer twice collected trash set out for pickup at xxxx Dichotomy Court. Inside the trash they collected on October 16, 2017, were the following items: loose green weedy substance that field tested positive for marijuana, several burnt roaches/joints that field tested positive for marijuana, and a prescription label with Howard's name. Inside the trash collected on October 23, 2017, the officers located the following items: several burnt roaches/joints that field tested positive for marijuana, three plastic sandwich baggies that had the corners cut off and a corner section of a baggie, papers and mail items with Howard's name and the xxxx Dichotomy Court address, a Macy's store receipt for men's clothing, and two packets of empty cigarillo wraps called "High Hemp" and "White Owl." (Aff. 4.)

A judge with the Allen Superior Court authorized the search warrant on October 27, 2017, directing the officers to search for heroin, fentanyl, marijuana, and other items constituting evidence of illegal drug transactions and illegal possession of these controlled substances.

## ANALYSIS

When an "affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39 (quotation marks, brackets, and ellipsis omitted).

The "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). For this reason,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238.

Detective Wise's affidavit, setting forth the details of two controlled drug purchases,

established a reasonable probability that Williams and Howard were dealing drugs. The affidavit also provided sufficient basis to believe that Howard lived at xxxx Dichotomy Court, and that Williams likely used the house as his residence as well. Additionally, the trash searches provided reason to believe that the occupants of the home were possessing and using marijuana.

The Defendant offers several arguments to oppose the conclusion that the affidavit sufficiently connected drug trafficking activity or the Defendant to xxxx Dichotomy Court. The Defendant's arguments, however, rely on a "a hypertechnical, rather than a commonsense" interpretation of the affidavit. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). As one example of this approach, the Defendant submits that the judge who granted the warrant should have questioned one of the statements describing the second controlled drug buy—that the CI "handed Ms. Howard and Mr. Williams the money." (Aff. 3.) According to the Defendant, "[a]ny Magistrate reading this description would question its veracity. The CI would normally have given the money to either Williams or Howard, not both. To say that the CI gave the money to Williams and Howard seems extraordinary." (Def.'s Reply 4, ECF No. 57.) The Defendant asserts that the judge's failure to address this raises serious questions regarding the judge's attention to detail. The Court finds no merit in this argument. The simple concept of a drug transaction, that money was exchanged for drugs, cannot be seriously questioned by the choice of wording regarding who the CI handed the money to. It was evident during the transaction that the Defendant and Howard were acting in concert. Thus, it would not be unusual to say that the CI handed them the money—and failure to seek clarification regarding whether it was Howard or Williams who took the money does not evidence a lack of attention to detail.

The Defendant also challenges the reliability and credibility of the CI, arguing that the CI

6

only provided a general statement that he was going to "purchase a gram of heroin/fentanyl from a subject that [the CI] knows as Juan Williams, who lives on Dichotomy Drive." (Aff. 1.) The Defendant notes that the CI did not give an exact address or any other information about the Defendant, and that the officers' attempts to corroborate an address on Dichotomy *Court*, not *Drive*, evidences his unreliability and "is an implicit admission on the part of the police that the CI was not reliable." (Suppl. Br. 9 n.1, ECF No. 47.) The CI did, in fact, purchase .7 grams of fentanyl from a person he was able to positively identify as the Defendant. "Controlled buys add great weight to an informant's tip." *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) (noting that police did not simply rely on the tip of an untested informant, but "boosted" his reliability with controlled buys). He also knew that the road that the Defendant lived on had Dichotomy in the name. That he referred to it as "Dichotomy Drive" instead of "Dichotomy Court" did not make his information less reliable, as people often do not put great weight on distinctions between Road, Street, Lane, Drive, Court, or Boulevard. The CI provided enough detail to allow law enforcement to further corroborate it. Surveillance units observed the Defendant's vehicle at one particular address on Dichotomy Court at various times throughout the month-long investigation. It was the same address that was listed in the Spillman system as belonging to Howard, the very person who accompanied the Defendant to, and participated in, the second controlled drug buy. Thus, the CI's information had proven very reliable, and the judge's "assumption that Dichotomy Drive and Dichotomy Court were one and the same" (Def.'s Reply 9) was a reasonable one, supported by the totality of the facts presented in the affidavit.

The Defendant argues that the assertion that Howard was the Defendant's girlfriend is a

7

conclusory remark that the judge issuing the warrant should not have considered, and an inference the judge could not reasonably make. The Court finds that a common sense reading of the facts in the affidavit support the conclusion that Howard was in a close personal relationship with the Defendant. Howard accompanied the Defendant during the second drug transaction (and perhaps the first). This demonstrated that the Defendant placed great trust in Howard, as she was privy to his serious illegal drug activity. Taking it a step further, the Defendant left Howard and the CI alone in his car to make the exchange while he went to purchase an item inside the store. There was certainly nothing about the transaction that necessitated Howard's presence for business reasons. It is more likely that their relationship was personal—and that was the reason she was present. After the transaction, the Defendant and Howard went to a restaurant. Additionally, as stated earlier, the Defendant's vehicle was observed throughout the investigation at Howard's xxxx Dichotomy Court residence. Thus, reference to Howard being the Defendant's girlfriend was not a baseless assumption.

The Defendant challenges whether the description of his car being present at xxxx Dichotomy Court does anything to establish that he resided there. He notes that "at different times throughout the day" is too lacking in detail. The times of day and how long the vehicle was observed are missing details that the Defendant claims were necessary to sufficiently connect him to the residence. Again, the Court disagrees. When the information is combined with the reasonable assertion that the Defendant and Howard were in a relationship, it provides further basis to believe that the Defendant resided, at least in some capacity, at the Dichotomy Court address. It was the only residence mentioned in the affidavit, even though the investigation had been ongoing for a month. Police have compelling incentive to locate every house that a

suspected drug dealer may be using to facilitate his trafficking, so the absence of any other address is telling.

In any event, whether the observations regarding the Defendant's vehicle being parked at the residence, his relationship with Howard, and the CI's statements provided the sufficient connection to the Dichotomy Court address—it would not change that Howard had a clear connection. Her address on the Spillman system was xxxx Dichotomy Court. The subject of a search warrant is "a location, not a person." *United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018). Additionally, "[w]arrants may be issued even in the absence of direct evidence linking criminal objects to a particular site. An issuing magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense, and specifically, in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) (citation, quotation marks, and brackets omitted); *see also Haynes*, 882 F.3d at 666 (noting that where an affidavit creates a "fair probability that *a* drug dealer lived at the house," there was probable cause to believe the house would "contain[] evidence of crime"). Not only did the affidavit establish that a drug dealer—Howard— lived at xxxx Dichotomy Court, but the Defendant's vehicle was seen leaving Dichotomy Court after the first controlled drug buy was arranged, and surveillance units followed him until the completion of the controlled buy. There is a fair probability that the drugs provided to the CI during the controlled buy had come from the residence.

Here, the judge had also had an additional reason to believe that drug evidence would be found inside the house. Evidence of drug use "creates a fair probability that more drugs remain in the home," *United States v. Leonard*, 884 F.3d 730, 734 (7th Cir. 2018) (citation and brackets

9

omitted), and two trash pulls conducted a week apart evidenced such use. The trash bags containing the drug evidence bore a "sufficient indicia of [Howard's] residency," *id.*, through the papers that bore her name and address, and a prescription bottle with her name. Thus, it was not only trafficking of drugs that was at issue, but illegal possession. The Defendant argues that the prescription bottle is not indicative of her residency. The Court does not track with the Defendant's claim. The trash was located at the very address listed in Spillman as belonging to Howard, and her name was on the type of item that belongs to a particular individual, and no others. The affidavit provided solid grounds to believe that the officers were searching Howard's trash, and not someone else's. The Defendant also suggests that, because the dwelling was described as a multi-family unit, or duplex, that others may have shared the same trash bin. This unlikely scenario of a shared trash bin at a private residence does not negate probable cause. Even more so where the affidavit makes no reference to the dwelling being occupied by any other persons. "Probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006).

Finding substantial evidence in the record to support the judge's decision to issue the warrant, this Court defers to that judge's determination that probable cause existed. Because the warrant was supported by probable cause, the Court does not need to address the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984). *See United States v. Farmer*, 543 F.3d 363, 378 (7th Cir. 2008).

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Suppress [ECF No. 37] is DENIED. The Court will issue a separate scheduling order.

SO ORDERED on October 5, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT